**Scott Jeffery NOREN, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. CX–84–1424.

Court of Appeals of Minnesota.

Feb. 26, 1985.

David J. Gherity, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Appellant's driver's license was revoked after he failed a breathalyzer test given by a St. Louis Park police officer. He presented evidence that the "simulator solution test," used to verify the breathalyzer machine's reliability, gave a low reading, contending that this renders the test invalid and unreliable. The trial court found the breathalyzer test adequate to sustain revocation of appellant's driver's license pursuant to Minn.Stat. § 169.123 (1982 & Supp. 1983). We affirm.

## FACTS

In April 1984 Sergeant James Welna, a St. Louis Park police officer and certified breathalyzer operator, administered a breathalyzer test to appellant Scott Noren. Welna followed the steps set out in the breathalyzer operational checklist as he prepared the machine and gave the test. One step was a "simulator solution test," performed to determine whether the machine is operating properly. In the test, a solution certified by the Bureau of Criminal Apprehension (BCA) to have an alcohol concentration of .11 is blown through the breathalyzer. If the simulator solution test gives a reading of .100 to .120, it is highly probable the machine is operating correctly. A reading outside those parameters alerts the officer that "something is amiss". A low reading may indicate that the simulator solution is becoming weak or that the machine is not operating properly.

Welna obtained a reading of .098 on the simulator solution test. This reading did not concern him because he usually obtained readings below .11 on such tests. In addition, many tests had been taken that month, and the readings were dropping. The simulator solution weakens with usage and is replaced in St. Louis Park approximately once a month. Welna had used the breathalyzer unit before and noted nothing that caused him to believe the machine was functioning improperly or inconsistently when he gave the test to Noren. Furthermore, Welna understood that a low reading would operate in favor of the subject.

Welna administered the breathalyzer test to Noren and obtained a reading of .18 alcohol concentration. Noren's driver's license was revoked pursuant to Minn.Stat. § 169.123 (1982 & Supp.1983). Noren petitioned for judicial review, and the trial court sustained the revocation.

## ISSUE

Did the trial court err in finding the breathalyzer test adequate to sustain revocation of appellant's driver's license pursuant to Minn.Stat. § 169.123?

## DISCUSSION

Minn.Stat. § 169.123, subd. 2 (Supp. 1983), provides that any person who drives a motor vehicle in Minnesota consents to a chemical blood, breath or urine test for the purpose of determining the presence of alcohol. Noren challenges the results of his breath test under Minn.Stat. § 169.123, subd. 6, alleging that the testing method was invalid and unreliable and therefore inadequate to sustain the revocation of his driver's license.

■ On review, this court should uphold a finding of the trial court "unless clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law." *Ortendahl v. Bergmann,* 343 N.W.2d 309, 311 (Minn. Ct.App.1984); *see also Estate of Serbus v. Serbus,* 324 N.W.2d 381, 385 (Minn.1982). In addition, it is well settled that laws relating to revocation of driving privileges are remedial statutes for the protection of the public and are to be liberally construed to that end. *See, e.g., Heddan v. Dirkswager,* 336 N.W.2d 54, 62–63 (Minn.1983); *State Department of Highways v. Normandin,* 284 Minn. 24, 26, 169 N.W.2d 222, 224 (1969).

■ The proponent of a chemical test must establish that the test is reliable and "that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *State v. Dille,* 258 N.W.2d 565, 567 (Minn.1977). After a prima facie showing of trustworthy administration has occurred, "it is 'incumbent upon defendant to suggest a reason why the * * * test was untrustworthy.'" *Tate v. Commissioner of Public Safety,* 356 N.W.2d 766, 768 (Minn.Ct.App.1984) (quoting *Dille,* 258 N.W.2d at 568).

■ In this case a satisfactory prima facie showing of trustworthy administration was made. Sergeant Welna, a certified breathalyzer operator, testified that he followed all of the steps set out in the standard breathalyzer operational checklist before administering the test and that

nothing caused him to believe the machine was malfunctioning. Noren rebutted the State's prima facie showing of trustworthiness with expert testimony that a low simulator solution test could mean the breathalyzer was not operating correctly or that the simulator solution was weakening.

Noren's evidence, however, stops short of proving the breathalyzer test in this case invalid and unreliable. It is not sufficient to merely raise a suspicion or speculate about the meaning of a low reading; there must also be some indication that a low reading would unduly exaggerate the subject's test results. We cannot tell from Noren's evidence what would be the effect of the low simulator solution reading on Noren's test result.

Although the reliability of a breathalyzer test is rebuttable, *see State, Department of Public Safety v. Habisch,* 313 N.W.2d 13, 16 (Minn.1981), a low simulator test reading does not automatically render the test unreliable. If the prima facie showing of the test's reliability is challenged, "the judge must rule upon the admissibility in the light of the entire evidence." *State v. Parker,* 271 S.C. 159, 245 S.E.2d 904, 906 (1978). An explanation of the deviation that is satisfactory to the trial court can preserve the credibility of the subject test, both for admissibility and also for evidentiary weight.

Here Welna provided such an explanation. He testified that he usually obtained low simulator test readings on this breathalyzer unit. In addition, many tests had been taken that month and the readings had been dropping, suggesting that the solution was weakening rather than that the machine was operating incorrectly. Finally, Welna assumed, logically, that a low reading would operate in favor of Noren.

We also note that Noren's test showed an alcohol concentration level of .18, substantially higher than the .10 standard required by Minn.Stat. § 169.121, subd. 1(d) (1982). This provides a large margin of error within which to evaluate this breathalyzer test.

### DECISION

Noren did not present sufficient evidence to rebut the State's prima facie showing of the breathalyzer test's reliability.

Affirmed.