Roger **JOHNSON**, Petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C9–85–128.

Court of Appeals of Minnesota.

Oct. 1, 1985.

James H. Kaster, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered, and decided by HUS-PENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Appellant Roger Johnson seeks review of the trial court's order sustaining revocation of his driving privileges under Minn.Stat. § 169.123 (1984). He asserts that the trial court erred in determining that the test was reliable. We affirm.

## FACTS

Appellant was arrested for driving while intoxicated on September 27, 1984. A certified Intoxilyzer operator administered the Intoxilyzer test, following standard procedures. The internal check of the machine indicated that it was functioning properly. Four air blank readings were taken, each of which registered at .000, the proper reading. Two breath samples were taken from appellant. The first reading was .161, with a replicate reading of .160. The second reading was .160, with a replicate reading of .161. The "reported value" for the tests was .16.

The simulator solution reading was .099, with a replicate reading of .099. The target value set by the Minnesota Bureau of Criminal Apprehension (BCA) is .11, with a range of "plus or minus .01." The BCA's guidelines give a recommended range of .10 to .12. The simulator solution therefore read .001 below the acceptable range. No additional test was offered.

Two expert witnesses testified regarding the low simulator solution reading. Respondent's expert, Elden Ukestad, testified that the low reading could have been caused by a leak or loose connection between the simulator solution and the Intoxilyzer. He further testified that he was 99.9 percent sure that the appellant's alcohol concentration was above .10, but only 85 percent sure that it was plus or minus 15 percent of the .16 reading. He also stated that if the simulator solution is out of range, it is an invalid test and the operator should determine the reason for the invalidity and offer an additional test.

Appellant's expert, Dr. Richard Jensen, testified that when there is a calibration standard analysis reading outside the established tolerances, there is a systemic error, the source of which one can only speculate. He further testified that such an error invalidates the test results, and one cannot draw any conclusions as to appellant's alcohol concentration.

The trial court found that the Commissioner showed by a fair preponderance of the evidence that the test results indicated a blood alcohol concentration of .10 or more, that the testing method was valid and reliable, and that the test results were accurately evaluated. The calibration standard analysis reading which was .001 below the recommended tolerance went to the weight of the evidence, not its admissibility. The court sustained the revocation of appellant's driving privileges, and appellant brought this appeal.

### ISSUE

Did the trial court err in concluding that the evidence was sufficient to support a finding that the test reliably showed that appellant's blood alcohol level was .10 or more?

### ANALYSIS

Appellant challenges the revocation of his driving privileges under Minn.Stat. § 169.123, subd. 6 (1984). That section provides that a revocation may be challenged on grounds that the testing method was not valid and reliable, or that the test results were not accurately evaluated. Appellant contends that because the simulator solution gave a reading below the allowed range, the reliability of the test was called into question, and the Commissioner must now affirmatively rebut the claim through an explanation for the deviant results in order to restore the test credibility.

■ Laws which prohibit driving while intoxicated are remedial and should be liberally construed in favor of the public interest. *Rude v. Commissioner of Public Safety*, 347 N.W.2d 77, 80–81 (Minn.Ct.

App.1984), *citing Minnesota Department of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). This court will sustain findings of the trial court unless clearly erroneous. *Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982). *Noren v. Commissioner of Public Safety*, 363 N.W.2d 315, 317 (Minn.Ct.App.1985). Conclusions of law will not be reversed unless erroneous. *Juncewski*, 308 N.W.2d at 319. We do not find clear error in this case.

■ When a chemical test is used, the proponent has the burden of showing that the test is reliable and "that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977) (citations omitted). Here, the Commissioner showed that there had been a trustworthy administration of the test. The operator proceeded properly in conducting the test. In the operator's opinion, despite the fact that the simulator solution read minimally outside the recommended range, the machine functioned properly. With that foundation in evidence, it is then "incumbent upon defendant to suggest a reason why the * * * test was untrustworthy." *Dille*, 258 N.W.2d at 568. A low simulator reading does not *automatically* render the test unreliable. *Noren*, 363 N.W.2d at 318.

Appellant attempted to rebut the Commissioner's prima facie showing by testimony that the test results were invalid. Appellant's expert testified that the low simulator reading rendered the test invalid. The Commissioner's expert did admit that if the simulator solution is out of range it is an "invalid" test in that it does not meet Minnesota Bureau of Criminal Apprehension standards and cannot stand on its own. However, he also testified that he was 99.9 percent certain that the test showed that appellant's blood alcohol concentration was above .10.

Upon a challenge of a prima facie showing of a test's reliability, "the judge must rule upon the admissibility in the light of the entire evidence." *State v. Parker*, 271

580

S.C. 159, 245 S.E.2d 904, 906 (1978), *quoted in Noren,* 363 N.W.2d at 318.

The trial court here considered all the evidence, including appellant's expert testimony that the low reading rendered the test invalid, and the Commissioner's expert testimony that despite his belief that the test was "invalid," he was 99.9 percent certain appellant's blood alcohol level was .10 or above.

■ We are troubled by the failure of the Intoxilyzer operator to give another test when the simulator reading was slightly below the acceptable range. However, with respondent's expert testifying that he was 99.9 percent certain that appellant's blood alcohol level was .10 or above, we find the trial court was not clearly erroneous. Viewing the totality of the record, sufficient evidence supported the trial court's findings.

This case is distinguishable from *Haegele v. Commissioner of Public Safety,* 353 N.W.2d 704 (Minn.Ct.App.1984), where this court found that the failure to follow all requirements of a breathalyzer checklist and the use of an ampoule which did not meet the Minnesota Bureau of Criminal Apprehension standards made the test unreliable. There, the Commissioner's expert gave conflicting testimony regarding the reliability of the test. This court found the conflict sufficient to make the testimony unreliable. Here, the Commissioner provided sufficient testimony supporting the reliability of the test.

Where the simulator results were low, it would have been better practice for the operator to ask appellant to retake the test or offer an alternative test. *See Gunderson v. Commissioner of Public Safety,* 351 N.W.2d 6, 7 (Minn.1984) (holding that a driver who agrees to submit to a breath test must submit to a blood or urine test if the testing machine does not work). We cannot, however, say that the trial court abused its discretion in finding that the appellant's test indicated that his blood alcohol level was .10 or above.

**DECISION**

The trial court was not clearly erroneous in its finding that the test reliably showed that appellant's blood alcohol level was .10 or above.

Affirmed.