Leon **KELZER, et al., Respondents,**

v.

Wayne **WACHHOLZ, Appellant.**

**No. CX–85–1563.**

Court of Appeals of Minnesota.

Feb. 11, 1986.

Mary Kendall Adler, Chaska, for respondents.

Bradley W. Solheim, Waconia, for appellant.

Considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondent Leon Kelzer sued appellant Wayne Wachholz to recover damages to his property and punitive damages, alleging that Wachholz committed intentional torts of trespass and damage to property. Ardis Kelzer, Leon Kelzer's daughter, sued Wachholz for personal injuries resulting from the same conduct. The jury found liability and awarded $2500 compensatory damages and $12,500 punitive damages to Leon Kelzer, and $43,540 in compensatory damages to his daughter. Wachholz appeals from the judgment and from the order denying his motions for judgment notwithstanding the verdict and for a new trial. We affirm.

## FACTS

Ardis Kelzer lives and works on her family's farm in rural Carver County. As she was returning home at about 12:30 a.m. one night in late September 1983, she found an abandoned pickup truck sitting on the road near a field road that leads into the Kelzer property. The truck was not off on the shoulder of the road but was sitting right in the driving lane, creating a hazard. Ardis noticed that the truck was marked "Wachholz Trucking."

Ardis continued on to the house where she called the sheriff about the truck. After making the call, she went to the barn, where she discovered that two animals had been released from their pen. Ardis confined the animals and left the barn.

Outside, Ardis noticed a light by a machine shed. At first she thought the police had arrived to check on the abandoned truck. Then she realized the light was actually a fire in the machine shed. She went back to the house, awakened her parents, and then ran towards the barn to get some buckets for water. As she ran she slipped, fell, and cut her thumb on a piece of broken glass that was lying on the ground.

The fire had been started in the rock box of a tractor parked in the machine shed. The rock box is a metal, square box on the front end of a tractor, where weights can be placed to balance the machine. At trial, Leon Kelzer testified that over two dozen empty seed sacks were also in the rock box, left over from a previous planting day. Burned pieces of paper were strewn on the floor of the shed, and the remains of burned matches were found nearby. After first using a fire extinguisher on the burning tractor, Leon Kelzer succeeded in driving the tractor out of the shed and over to a water hydrant, where the fire was completely extinguished.

In addition to the damage to the tractor, part of the Kelzer's fence had been torn down, a motorcycle seat had been slashed, and a pickup truck in the shed had dirt in its oil filler pipe, a cut radiator hose, and a broken battery post. Another piece of machinery had a slashed generator belt, a slashed tire, and a missing distributor cap. Tools were also missing from the shed.

Because of Ardis Kelzer's report about the Wachholz truck, the police went to appellant's house about 2:00 a.m. They found the truck there, and discovered that the hood was still warm. They also observed fresh wet mud on the floor of the truck. When Wachholz's wife let the police into the house, they found appellant asleep in the living room. The police awakened Wachholz and questioned him about his activities that night. He stated that he had no recollection about the last two hours, saying only that he had been at a bar with a friend. He said that he was too intoxicated to remember anything.

The police found a pair of wet, muddy boots and a pair of wet, muddy blue jeans inside the front door of Wachholz's house. Leon Kelzer and one of the police officers testified that the prints found in the mud around the shed and on the field road matched the shape and contour of the boots. The police officer testified that after returning with the boots to the scene and putting them into a print, he formed an opinion that these were the boots that made the prints. Leon Kelzer agreed.

Wachholz, who proceeded pro se, attempted to have a Minnestoa Bureau of Criminal Apprehension (BCA) laboratory report admitted into evidence, but the trial court excluded it for lack of foundation. The report concludes that a plaster cast taken of the footprint had insufficient characteristics for any conclusions to be drawn from a comparison with the boot. The boots themselves were admitted into evidence.

Leon Kelzer testified that he was a supervisor on the town board of Waconia from 1979 until 1984 and that his position put Wachholz on the "opposite side of the fence" from him several times. He testified that at a zoning hearing about a month before the September incident, Wachholz and his father had applied for a zoning variance and were in attendance at the meeting, seated behind Kelzer. Kelzer testified that when he made some comments about the inappropriateness of the variance, appellant's father said: "Well, there he goes again, that s.o.b. Everytime he speaks up he's trouble." Wachholz replied: "Well, he'll get his trouble one of these days too." The clerk for the city of Waconia, who was sitting with Kelzer at the zoning hearing, also testified that the appellant and his father made these remarks.

## ISSUES

1. Was it error to omit a jury instruction on comparative negligence?

2. Was it error to exclude the BCA report?

## ANALYSIS

The Minnesota Rules of Civil Procedure state that:

No party may assign as error * * * omissions in the charge [to the jury], unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court.

Minn.R.Civ.P. 51 (1985). Because appellant made no objection to the jury instructions at trial, he may subsequently question the instructions only if there was an error with respect to a fundamental law or controlling principle.

■ Wachholz alleges that it was error not to give a jury instruction on comparative fault when fault of the plaintiff is obvious. He claims that this instruction should be given without demand when a party proceeds pro se.

Because the case was tried purely as an intentional tort case, appellant's arguments must fail. Intentional tort actions are not subject to the comparative fault statute. See Minn.Stat. § 604.01 (1984). Fault of Ardis Kelzer, whether obvious or not, is irrelevant to her cause of action.

2. Evidentiary rulings on foundation are committed to the sound discretion of the trial judge and are not the basis for reversal unless that discretion has been clearly abused. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983). Further, before an error in the exclusion of evidence may be grounds for a new trial, it must appear the evidence might reasonably have changed the result of the trial if it had been admitted. *Id.* The court in *Jenson* was construing Minnesota's harmless error rule. See Minn.R.Civ.P. 61. Rule 61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Minn.R.Civ.P. 61.

■ Wachholz attempted to admit the BCA report through the testimony of Leon

Kelzer, who had no knowledge of or relationship to the preparation of the report. The exclusion of the report was within the judge's discretion because there was lack of foundation.

Relying again on his pro se status, Wachholz nevertheless argues that the trial court erred in excluding the BCA report. He contends that an attorney would have easily established the necessary foundation for the admission of the report. He points out that, had he obtained a certified copy of the report, it would have been admissible even without a foundation witness. *See* Minn.R.Evid. 902(4). On the other hand, the trial judge advised Wachholz more than once that he should obtain counsel. The judge also took the time to explain each of respondent's objections and every ruling from the bench. There was no error.

Even if we were to accept appellant's argument, the trial court's decision was harmless. The BCA report merely states that a comparison of the plaster cast with the boot was inconclusive, not that the cast was not of the boot's track.

Even more importantly, if the BCA report had been admitted, and if its admission might have weakened the testimony of Leon Kelzer and the police officer about the match between the prints and the boots, the jury had ample additional evidence upon which to base a verdict for respondent. Wachholz had previously expressed animosity towards respondent. Wachholz never denied doing the damage; he only denied responsibility for it and claimed not to remember where he was or what he was doing from midnight until 2:00 a.m. that night. His truck was parked on the main road where it intersects with the Kelzer field road. His boots and jeans were wet and muddy, and his truck had fresh, wet mud on it. He told the police where he was and with whom, but at trial he did not produce any alibi witnesses on his behalf.

## DECISION

The trial court did not err in choosing not to instruct the jury on the law of comparative negligence. It was within the trial court's discretion to exclude the BCA report. Even if error could be found in the exclusion of the report, the decision was harmless.

Affirmed.