Ronald Steven PASEK,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C3–85–1789.

Court of Appeals of Minnesota.

March 4, 1986.

Lynn S. Castner, Minneapolis, for appellant,

Hubert H. Humphrey, III, Atty. Gen., Lawrence M. Schultz, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J. and FOLEY and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

Appellant Ronald Steven Pasek was arrested for driving while intoxicated and, after receiving a result of .18 on an Intoxilyzer test, his driving privileges were revoked. He petitioned for judicial review, and the trial court sustained the revocation. On appeal Pasek contends that the results of the Intoxilyzer test should have been suppressed when, at the time of the test, he had a quantity of snuff in his mouth. We affirm.

## FACTS

Lakeville Police Officer Thomas Hakala was en route to a call in the early morning hours of July 13, 1985, when he noticed Pasek driving erratically, and stopped him at approximately 1:08 a.m. Hakala observed indicia of intoxication and formed

the opinion that Pasek was intoxicated. Hakala arrested Pasek for driving while intoxicated, handcuffed him, and brought him to the Lakeville Police Department.

Hakala read the implied consent advisory to Pasek at 1:31 a.m. and Pasek agreed to take a breath test. Hakala observed Pasek for approximately twenty-five minutes prior to the time the Intoxilyzer test was performed. He was watching to see whether Pasek put anything in his mouth and he did not notice him do so.

Lakeville Police Officer Shawn Mahaney, a certified police officer and Intoxilyzer operator, performed the Intoxilyzer test on Pasek. Mahaney testified that the machine performed the internal diagnostic procedure. The air blank test result of .000 and the calibration standard test reading of .100 were both within the standard limits.

Pasek blew into the machine. The reading on the first test was .182, with a replicate test of .185. The reading on the second test was .180, with a replicate test of .183. Officer Mahaney opined that the test results were accurate.

On cross-examination, Mahaney testified that in the Intoxilyzer manual, one item of concern is that the subject have his mouth clear of any substances to insure that no contamination of the test results occurs. The purpose of the fifteen to twenty minute observation period is to insure that the mouth is clear. Mahaney testified that if a substance is discovered in the mouth, his training indicates that he should delay testing for a period of time, depending on what he finds in the mouth.

Mahaney testified, without a hearsay objection, that a Bureau of Criminal Apprehension instructor told him that chewing tobacco and snuff does not affect the test results, but subjects must remove the substances from their mouths because when they blow into the Intoxilyzer the substance will go into the mouthpiece itself. The instructor also said that he had run many tests with large amounts of chewing tobacco or snuff and he even soaked them with alcohol to see whether that affected the test results. It did not.

Pasek told Mahaney between the first test and second test that he had some chewing tobacco in his mouth. Mahaney testified that they have a problem with people who chew snuff because it seems that their mouths are never clear. When they start blowing they will sometimes have a small amount of snuff show up in the mouthpiece. He makes sure that their mouths are as clear as possible. Mahaney believed Pasek may have been chewing snuff because he noticed that after Pasek blew the first sample that the mouthpiece had a small amount of something on it. He then had Pasek clear his mouth as best he could. After the second sample, Mahaney noticed the second mouthpiece had "dark saliva on it."

Pasek testified that while Officer Hakala was observing him, he was not asked whether he had anything in his mouth when he was stopped. He did, however, have a pinch of snuff in his mouth. He demonstrated to the court where he put the snuff in his mouth. He said that he put another pinch of snuff in his mouth at the police station after his handcuffs were removed. He was never told not to do so.

Pasek further testified that when he was asked to take the test, he had the remainder of the first pinch and the fresh pinch in his mouth. He volunteered that he had snuff in his mouth after he gave the first sample. He said that he was not asked to remove it and the officers did not seem concerned about it. He did spit some of it out prior to taking the second test.

The trial court found that Pasek's breath was properly analyzed by an Intoxilyzer machine and resulted in a reading of .18 alcohol concentration. It specifically found that the remnants of a pinch of chewing tobacco in Pasek's mouth at the time of the testing did not affect the validity of the test or the result obtained.

## ISSUE

Did the trial court abuse its discretion in finding that the Commissioner made a pri-

ma facie showing of the trustworthiness of the Intoxilyzer test and in finding that appellant failed to rebut that showing where appellant's mouth contained the remnants of a pinch of chewing tobacco at the time he took the test?

## ANALYSIS

Initially we note that Pasek has attached to the appendix of his brief a manual entitled "Chemical Training Course Conducted by the Bureau of Criminal Apprehension Laboratory" and an excerpt from a "Preliminary Operator's Training Manual from the Bureau of Criminal Apprehension" for the Intoxilyzer 5000. Although Officer Mahaney referred to a manual in his testimony, he did not identify the manual, and neither of these documents was received into evidence nor considered by the trial court.

■ In seeking to include the documents in the record on appeal, Pasek relies upon Minn.R. 7502.041, which provides:

Breath samples must be tested for alcohol concentration using procedures approved and certified to be valid and reliable testing procedures by the director, Forensic Science Laboratory, Bureau of Criminal Apprehension, Department of Public Safety of the state of Minnesota.

There has been no showing that the proffered documents contain the procedures referred to in the rules. Where such items were not introduced below, we cannot consider them.

In order to lay a sufficient foundation to introduce a test into evidence, the proponent "must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977). Minn.Stat. § 634.16 (1984) provides that results from an infrared breath test performed by a trained person "are admissible in evidence without antecedent expert testimony that an infrared breath-testing instrument provides a trustworthy and reliable measure of the alcohol in the breath."

Officer Hakala testified that he observed Pasek for twenty-five minutes before the Intoxilyzer test, and he did not see him put anything in his mouth. Officer Mahaney testified that the diagnostic procedure was performed and the air blank and calibration standard tests fell within acceptable limits. Two adequate breath samples were provided. Mahaney testified that the Intoxilyzer was in proper working order and the results were accurate.

Pasek alleges that the presence of tobacco in his mouth at the time of testing invalidated the test and mandated its suppression. He also complains that an improper burden was placed upon him when he was required to go forward with evidence to show that failure to observe certain procedures invalidated the test. We cannot agree. *See Scheper v. Commissioner*, 380 N.W.2d 222 (Minn.Ct.App.1986).

■ While there was testimony indicating that the mouth should be clear when taking the test, there was also testimony indicating that chewing tobacco and snuff make no difference in a test reading. There was testimony that even tobacco soaked in alcohol did not affect the test results.

The trial court found the testimony on behalf of the Commissioner to be credible. We concur with the trial court that a prima facie showing of the trustworthiness of the test was made.

This court has considered a number of cases in which the opponents of a test attempted to rebut a prima facie showing of trustworthy test administration. *See, e.g.*, for example, *Noren v. Commissioner of Public Safety*, 363 N.W.2d 315 (Minn.Ct. App.1985); *Haegele v. Commissioner of Public Safety*, 353 N.W.2d 704 (Minn.Ct. App.1984). We have specifically held that where there is sufficient indicia of reliability, it is not necessary that all twenty-five steps on a BCA checklist for the breathalyzer be followed. *Kooi v. Commissioner of Public Safety*, 363 N.W.2d 487, 489 (Minn.Ct.App.1985).

Where the opponent does rebut the prima facie case, "the judge must rule upon the admissibility in the light of the entire evidence." *State v. Parker,* 271 S.C. 159, 164, 245 S.E.2d 904, 906 (1978) (quoted in *Noren,* 363 N.W.2d at 318). The credibility of the test may be preserved with an explanation of the deviation. *Noren,* 363 N.W.2d at 318.

Here Pasek's speculation that tobacco would affect the reliability of the test was not sufficient to rebut the prima facie showing of the Commissioner. Pasek was obligated to produce evidence that the tobacco would actually exaggerate the test results. He produced no evidence to contradict the officers' testimony that tobacco would not affect the results.[1]

The trial court specifically found that the remnants of a pinch of chewing tobacco in Pasek's mouth did not affect the validity or the results of the test. We discern no error either in the trial court's determination that the test was properly administered or in the trial court's determination that the tobacco in Pasek's mouth did not affect the test result.

### DECISION

The trial court's decision to admit the results of the test, despite the fact that remnants of tobacco were in appellant's mouth at the time he took the test, was not an abuse of discretion. Appellant failed to rebut the prima facie showing of the trustworthiness of the test.

Affirmed.

---

1. In *Heitkamp v. State,* 363 N.W.2d 849 (Minn. Ct.App.1985), the defendant claimed that the test result was invalid because he had chewing tobacco in his mouth during the test, and an expert testified that chewing tobacco may invalidate a test result. This court did not reach the issue of whether tobacco affects the test results, because it affirmed the trial court's determination, based on conflicting evidence, that defendant had not in fact been chewing tobacco.