Dean Virgil **AHRENS**,
Petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY**, Appellant.

No. C1–86–876.

Court of Appeals of Minnesota.

Nov. 25, 1986.

Robert E. Pottratz, Meyer, Meyer and Pottratz, Melrose, for respondent.

Hubert H. Humphrey, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Respondent Dean Virgil Ahrens was arrested for driving while under the influence and failed a breath test. His license was revoked and he petitioned for judicial review. The trial court rescinded the revocation, and the Commissioner of Public Safety appeals. We reverse and remand.

## FACTS

Ahrens was arrested for driving while under the influence on April 5, 1986 by Sauk Centre Police Sergeant Amor Phillip Himsl. Ahrens agreed to take a breath test, and Himsl testified that he observed respondent for 15 or 20 minutes prior to administering the test. Minnesota State Trooper Amy Louise Wood, a certified Intoxilyzer operator, administered the test. Wood checked respondent's mouth visually before he gave his first breath sample, and found nothing in it. The machine went

through its internal diagnostic procedure, and the diagnostic check was "okay." The air blank test was performed, with the result of .000. The calibration standard test was then performed. The purpose of the calibration test is to show that the instrument is functioning properly. Wood testified that the Bureau of Criminal Apprehension (BCA) provides the solution, with a known concentration. When Wood ran the test on the known solution, she obtained readings of .11 and .113, which are within acceptable limits.

Wood testified that an Intoxilyzer log is kept for each machine, although she did not bring the log with her to the hearing. She testified that the simulator solution has to be changed each month or when the log sheet is filled, whichever comes first. To her knowledge, the simulator solution had been changed correctly.

Respondent objected to the admissibility of the test results. He argued that the reliability of the Intoxilyzer had not been established because no records had been introduced showing the instrument had been maintained and checked periodically, and because no Intoxilyzer log sheets had been introduced showing the simulator solution had been changed in accordance with BCA procedures. The trial court overruled the objections.

Wood went on to testify that the first subject test yielded results of .123 and .125, and the second subject test yielded results of .123 and .125. The final result was .12. Wood formed the opinion that the Intoxilyzer was performing accurately. On cross-examination, she stated she did not know the last time the machine had been checked by the BCA.

Respondent argued that the Commissioner failed to meet his burden of proving the reliability of the Intoxilyzer. The basis for respondent's argument was the Commissioner's failure to show the machine had been checked by the BCA to ensure correct operation and the failure of the Commissioner to introduce a log sheet at the hearing. Respondent also argued the observation period was inadequate.

The trial court found the 15 minutes observation period was adequate. It determined, however, that the Commissioner had an affirmative burden to show there was an inspection of the Intoxilyzer and that the machine was in a period where it would normally be expected to be working properly. It further found that the Commissioner had an affirmative burden to show that the simulator solution was within the proper tolerances with regard to the length of time it had been used. After the Commissioner had presented his case, the trial court rescinded the revocation of respondent's driving privileges and the Commissioner appealed.

**ISSUES**

1. Did the trial court err when it determined that the Commissioner did not meet his burden of proof as to the Intoxilyzer test?

2. Is the issue of whether the trial court erred when it determined the observation period was sufficient properly before the court?

**ANALYSIS**

**I.**

■ The proponent of a chemical test must establish that the test is reliable and that its administration conformed to the procedure necessary to ensure reliability. *State v. Dille,* 258 N.W.2d 565, 567 (Minn. 1977). The results of an infrared breath test, when performed by a trained person, are admissible without antecedent testimony that the instrument provides a trustworthy and reliable measure of alcohol in the breath. Minn.Stat. § 634.16 (1984). The Intoxilyzer is an infrared breath testing instrument. Minn.Stat. § 169.01, subd. 68 (1984); Minn.R. 7502.0420, subpt. 2 (1985). Trustworthiness in the test's administration exists where there is a sufficient indicia of reliability or a showing of the steps necessary to ensure reliability. *Dille,* 258 N.W.2d at 567, *Tate v. Commissioner of Public Safety,* 356 N.W.2d 766, 768 (Minn. Ct.App.1984). Once a prima facie showing

of trustworthy administration has occurred, it is incumbent on the opponent to suggest a reason why the test was untrustworthy. *Dille*, 258 N.W.2d at 568.

The trial court rejected the test on the grounds there was a lack of an Intoxilyzer log to show when the simulator solution had been changed, and lack of proof as to the last inspection of the machine. We cannot agree with respondent's contention that such determination should be reversed only upon a showing of abuse of discretion. *Tate*, 356 N.W.2d at 767. The trial court based its decision on its belief that the Commissioner has an affirmative burden to produce certain records. We must determine whether the trial court erred as a matter of law in imposing such requirement upon the Commissioner.

Despite a seeming lack of statutory support, respondent argues and the trial court agreed that the Commissioner must show that the particular machine used as a basis for the revocation was in working order, was reliable and was accurate. Respondent contends that these qualities cannot be established by internal procedures alone, and that because the Commissioner failed to show any external basis of reliability, the trial court properly rescinded the revocation.

Respondent cites *McManus v. State*, 695 P.2d 884 (Okla.Crim.App.1985), in which the court held that where the record reflected no mention of maintenance procedures by the State, and where the State failed to meet its burden of proving complete compliance with the rules of the Board of Chemical Tests for Alcohol Influence, the results of the breathalyzer should not have been admitted. *Id.* at 886. *See also Westerman v. State*, 525 P.2d 1359, 1361 (Okla.Crim.App.1974). However, the Oklahoma statutes specifically provide that collection and analysis of a blood, breath, saliva or urine sample, to be valid and admissible, must be performed in compliance with rules and regulations adopted by the Board of Tests for Alcohol and Drug Influence. Okla.Stat. tit. 47, § 759 (1981 and Supp.1982). The section specifically authorizes the Board to adopt standards and procedures regarding such matters as laboratories, tests, analyses, training, qualifications and equipment. *Id.* § 759 B. A driver whose license is revoked may raise the issue of whether "the testing procedures used were in accordance with the existent rules of the Board of Tests for Alcohol and Drug Influence." *Id.* at § 754(5)(a)(1).

■ Unlike the Oklahoma statutes, Minnesota law does not prescribe such a specific burden of proof for the Commissioner as to the Intoxilyzer test. Minn.Stat. § 169.-123, subd. 6 provides that the issue of "whether the testing method used was valid and reliable, and whether the test results were accurately evaluated" may be raised. Minn.Stat. § 634.16 provides that for infrared breath tests, the results of a test given by a fully trained person are admissible without antecedent expert testimony that the instrument provides a trustworthy and reliable measure of alcohol in the breath.[1] Had the respondent wished, he could have obtained the information from the Commissioner and used it to attack the reliability of the test. *See State, Department of Public Safety v. Habisch*, 313 N.W.2d 13, 16 (Minn.1981). However, under the current legislative scheme, there is no requirement that the Commissioner has an affirmative burden to produce such records.

In rescinding revocation of respondent's license, the trial court analogized Intoxilyzer use to cases in which radar is used to detect speeders. The statute governing speed restrictions provides conditions un-

---

**1.** Minn.R. 7502.0410, which was not cited by either party, provides that:

Breath samples must be tested for alcohol concentration using procedures approved and certified to be valid and reliable testing procedures by the director, Forensic Science Laboratory Bureau of Criminal Apprehension, Department of Public Safety of the State of Minnesota.

We are unaware of what procedures were "approved and certified" and whether these procedures include a requirement of some regular inspection of the Intoxilyzer.

der which evidence of speeding on radar is admissible. Minn.Stat. § 169.14, subd. 10 (1984). One of those conditions is that the device was tested by an accurate and reliable external mechanism, method or system at the time it was set up. Minn.Stat. § 169.14, subd. 10(d). This requirement specifically applies to radar testing devices. There is no corresponding requirement in section 634.16. We note, however, that the purpose of the Intoxilyzer calibration standard test using the simulator solution is to determine whether the machine is in calibration and whether it is functioning properly. *See Kadrlik v. Commissioner of Public Safety*, 388 N.W.2d 8, 9 (Minn.Ct. App.1986); *Feil v. Commissioner of Public Safety*, 383 N.W.2d 420, 422 (Minn.Ct. App.1986).

 As to the charge of the lack of an Intoxilyzer log, we note that even a low simulator solution does not automatically render a test unreliable. *Johnson v. Commissioner of Public Safety*, 374 N.W.2d 577, 579 (Minn.Ct.App.1985). Instead, there must be some indication that the low reading would unduly exaggerate the test results. *Noren v. Commissioner of Public Safety*, 363 N.W.2d 315, 318 (Minn.Ct. App.1985). The supreme court has addressed the effect of the use of a simulator solution for a breathalyzer which was 62 days old. It found that in those circumstances, the trial court correctly concluded that the state had established sufficient foundation to justify the admissibility of the test results. *Habisch*, 313 N.W.2d at 16 (Minn.1981).

Here, the trooper testified she believed the solution had been changed as required, and the simulator solution was within acceptable limits. There was no showing of any fault with the simulator solution, and the trial court erred in basing any revocation on failure to produce the log.

## II.

The trial court determined the observation period was adequate. The respondent on appeal challenges this determination. A respondent must file a notice of review to obtain review of the order. Minn.R.Civ.App.P. 106. No such notice of review was filed, and this court will not review the error alleged by the respondent. *Arndt v. American Family Insurance Co.*, 394 N.W.2d 791 (Minn.1986); *Acton Construction Co., Inc. v. State*, 363 N.W.2d 130, 135 (Minn.Ct.App.1985).

The trial court rescinded revocation of respondent's license at the close of the Commissioner's case, basing that rescission on a determination that the Commissioner had not met his burden of proof with regard to the reliability of the Intoxilyzer test. We find to the contrary. However, respondent has not yet had an opportunity to present evidence on his own behalf. Therefore, remand is necessary to permit him to do so.

### DECISION

This matter is reversed and remanded for further hearing to allow respondent an opportunity to present evidence on his own behalf.

Reversed and remanded.