Steven Robert FRITZKE,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C6–85–698.

Court of Appeals of Minnesota.

Sept. 3, 1985.

Daniel C. McInerny, Robert Bennett, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Lori Mittag, Joel Watne, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and LESLIE, JJ.

**OPINION**

LESLIE, Judge.

Appellant challenged the revocation of his driving privileges by the Commissioner of Public Safety. The trial court sustained the revocation and we affirm.

**FACTS**

On October 2, 1984, at approximately 1:00 a.m., Officer Richard Metro stopped appellant Steven Fritzke, after observing him driving erratically. Appellant showed signs of intoxication and was administered two field sobriety tests, and a preliminary screening breath test. He failed these tests and was arrested for driving while intoxicated. After being read the implied consent advisory, appellant agreed to submit to a breath test.

Appellant was transported to a police station, where a certified intoxilyzer operator administered the breath test to him in a proper fashion. The "reported value" of appellant's blood alcohol content was .12.

The respondent, Commissioner of Public Safety, revoked appellant's driving privileges, and appellant petitioned the court to rescind the revocation on several grounds. At the hearing, appellant attempted to discredit the reliability of the unit used to test his breath. He introduced the Intoxilyzer 5000 maintenance and calibration records.

Those records indicate that on October 10, 1984, the machine used by appellant had a printer problem, a shaft cleaned, the linearity checked and the "proms" set. Appellant, who had taken allergy medications the day before his arrest, also introduced a monograph entitled "A Study of the Effects of Volatile Solvents on the Intoxilyzer 5000," a monograph entitled "Characterization of Human Expired Air: A Promising Investigative and Diagnostic Technique" and testimony of a Bureau of Criminal Apprehension chemist to show his medication could have distorted test results. The Bureau of Criminal Apprehension's "Standards Relating to Evidentiary Instruments for Measuring Breath Alcohol," which showed factors the BCA considered prior to deciding to purchase the Intoxilyzer 5000 machines, was also introduced, as well as evidence showing that the Intoxilyzer 5000 did not meet standard 14.

The trial court concluded that despite the evidence introduced by appellant to discredit the machine, respondent showed by a fair preponderance of the evidence that the testing method used was valid and reliable and that the test results were accurately evaluated. The court sustained revocation of appellant's driving privileges, and appellant brought this appeal.

### ISSUE

Whether the Commissioner of Public Safety proved by a fair preponderance of the evidence that the Intoxilyzer 5000 test was valid and reliable with accurately evaluated results?

### ANALYSIS

Any person who drives a motor vehicle in Minnesota consents to a chemical test to determine the presence of alcohol. Minn. Stat. § 169.123, subd. 2 (1984). Appellant here alleges that the testing method used was not valid or reliable, and that the test results were not accurately evaluated. Minn.Stat. § 169.123, subd. 6.

■ The findings of the trial court will be sustained unless clearly erroneous. *No-*

*ren v. Comm. of Public Safety,* 363 N.W.2d 315, 317 (Minn.Ct.App.1985). Conclusions of law will be reversed if the trial court has an erroneous view of the law. *Id.* Finally, laws prohibiting a person from driving while intoxicated are remedial, and should be liberally construed in favor of the public interest. *State, Dept. of Public Safety v. Juncewski,* 308 N.W.2d 316, 319 (Minn.1981).

■ The Commissioner has the burden of showing that the test is reliable and that it was administered to appellant in conformance with procedures necessary to ensure its reliability. *State v. Dille,* 258 N.W.2d 565, 567 (Minn.1977). The Commissioner clearly met his burden of proof. The operator testified that he had received training in the operation of the machine and that the air blank and calibration standard tests were within the acceptable limits. He testified that he did not note anything which would lead him to believe the instrument was not in proper working order. In his opinion the intoxilyzer was functioning properly, and appellant was under the influence of alcohol. Appellant does not contend that the Commissioner failed to meet this burden of proof.

Once the Commissioner has made such a prima facie showing of trustworthy administration, it is "incumbent upon [appellant] to suggest a reason why the * * * test was untrustworthy." *Dille,* 258 N.W.2d at 568. In this case, appellant introduced rebuttal evidence. He contends that because the state failed to respond to numerous items of rebuttal evidence casting doubt on the validity and reliability of the testing device and the accuracy of the particular test performed on appellant, the court could not have reasonably found that the state met its burden of proof.

We disagree. The evidence which appellant offered in rebuttal did not require the trial court to find that the state did not meet its burden of proof. Appellant testified that he had consumed allergy medication on the day prior to the arrest. He submitted two monographs and a transcript of testimony by a BCA chemist, con-

tending that a consumption of the allergy medication affected test results. There was no specific discussion in the evidence linking the medication with distortion of test results. General allegations that the medication affected the test results, without specific proof that it occurred, cannot be used to invalidate the test results. *See Noren*, 363 N.W.2d at 318.

Appellant also contends that the Commissioner failed to rebut evidence that the machine needed repairs subsequent to the test, and evidence that other similar machines needed repair. No showing was made indicating that such problems had any effect on the reliability of the machine or on the results of appellant's test.

Finally, appellant contends that when the state was evaluating which breath testing machine to purchase, it prepared a set of standards for judging the available machines. Appellant contends that standard 14, which provides that "[t]he instrument must have supporting documentation of reliability and service from independent testing laboratories and/or current users as specified by the Breath Testing Laboratory," was not met. Appellant has not shown the significance of failure of the machine to meet this standard. The fact that the instrument was furnished by the BCA "provide[s] a sufficient indicium of reliability to establish the prima facie admissibility of the test results." *Dille*, 258 N.W.2d at 568.

In summary, the rebuttal evidence provided by appellant does not prove the machine or the evaluation of the results were invalid or unreliable. Mere suspicion and speculation as to the validity of the machine or its evaluation are not sufficient to rebut the Commissioner's prima facie case. *Noren*, 363 N.W.2d at 318.

### DECISION

The trial court was not clearly erroneous in finding that the testing method was valid and reliable and that the test results were accurately evaluated. The revocation of appellant's driving privileges is affirmed.

AFFIRMED.