STATE of Minnesota, Appellant,

v.

Gary Lee NELSON,
Respondent/Cross Appellant.

No. C5–86–1092.

Court of Appeals of Minnesota.

Jan. 27, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, David Wexler, Asst. City Atty., City of Columbia Heights, Columbia Heights, for appellant.

Theodore K. Abe, Minneapolis, for respondent/cross appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FOLEY, Judge.

Respondent Gary Lee Nelson was charged with driving while under the influence and alcohol concentration of .10 or more. A pretrial hearing based on stipulated facts was held before the first trial judge on March 26, 1986. The motion to suppress respondent's breath test results on the ground that the observation period preceding the test was inadequate was granted. From that order, the State has taken this appeal.

On June 25, 1986, a second trial court judge denied respondent's motion to suppress the breath test on the additional ground that an abnormal simulator solution reading occurred subsequent to respondent's test.[1] Respondent's motion to dismiss the charges because a videotape of his field sobriety test was accidentally erased by the Columbia Heights Police Department was also denied at this time. Respondent cross appeals from these two rulings. We affirm in part, reverse in part and remand for trial.

## FACTS

On the evening of September 2, 1985, Columbia Heights police officer Michael McGee responded to an auto accident involving a car driven by respondent. After observing indicia of intoxication, Officer McGee arrested respondent for driving while under the influence. Respondent was brought to the police station where he took a breath test on an Intoxilyzer machine. Respondent failed the test with a reading of .24 and was charged with DWI and Alcohol Concentration of .10. The parties stipulated that the Minnesota Bureau of Criminal Apprehension (BCA) checklist for Intoxilyzer testing recommends a 15–20

minute observation period prior to conducting the test to allow for the elimination of residual mouth alcohol from the mucus lining of the mouth cavity and nasal passages. During the observation period a subject is not to eat, drink, smoke or introduce any substance into his mouth. Further, if the subject burps or regurgitates during this time, the operator is to delay starting the test for at least 15 minutes.

The parties further stipulated as follows:

3. The 15 to 20 minute observation period occurred in the Columbia Heights police station where Officer McGee had Mr. Nelson sit in a chair against the wall in an adjacent room. The room in which Officer McGee was in had its door open to the corridor and there was also a glass partition from which Officer McGee could view the defendant. Officer McGee was in the adjoining room doing paperwork relative to this arrest. Officer McGee was approximately 25 feet away from Mr. Nelson during this time period.

4. Officer McGee did not see defendant from his observations put anything into his mouth and found no evidence that Mr. Nelson had thrown up during this 15 to 20 minute period.

5. Officer McGee also did not observe defendant burp or regurgitate, however, defendant may have burped or regurgitated during this 15 to 20 minute period. During the administration of the Intoxilyzer test, Officer Kapala, the Intoxilyzer operator, did not observe defendant either burp or regurgitate.

Based on these stipulated facts and noting that there was a higher standard for admissibility of a breath test in a criminal case than in a civil case, the trial court ruled that since respondent "may" have burped or regurgitated, the Intoxilyzer test results were unreliable and therefore inadmissible.

---

1. We note for the record that four different trial judges dealt with this case at some stage or another. The pretrial issues of fact and law presented by this case did not warrant this mul-
tiple review and conduct of hearings. The orderly administration of justice would have been better served had it been assigned to one or, at most, two judges.

Subsequently respondent brought two motions before the trial court. First, respondent requested that his case be dismissed or that he be acquitted, because the Columbia Heights Police Department had destroyed evidence when they inadvertently erased the videotape of his field sobriety test. The officer who erased the tape stated by affidavit that the accidental erasure was due to his inexperience with revised videotaping procedures, and that he had no knowledge of the contents of the videotape.

Second, respondent moved to suppress the results of the breath test based on the additional ground that the Intoxilyzer test on a DWI suspect produced abnormal readings 19 days after respondent was tested, suggesting that the machine may have been malfunctioning when respondent was tested. The second trial judge denied both motions.

## ISSUES

1. Did the trial court err in excluding respondent's breath test?

2. Did. the inadvertent erasure of the videotape of respondent's field sobriety test require dismissal of the complaint against respondent or a judgment of acquittal?

3. Did the trial court err in denying respondent's motion to suppress the results of his breath test on the additional ground that the simulator solution readings on the machine showed abnormalities 19 days after respondent was tested on the machine?

## ANALYSIS

### I.

In granting respondent's motion to suppress the results of the Intoxilyzer test, the trial court indicated that it was proper to use a higher standard for admissibility of a breath test in a criminal case than would be used in a civil case. Evaluating the testing conditions and procedures against this higher standard, which was never articulated, the trial court decided that the test did not meet the minimum standards for reliability established by the BCA, and was

therefore unreliable. Specifically, the court noted that BCA operating procedures suggest that the test be delayed at least 15 minutes if the subject burps or regurgitates. Because respondent's *possible* burping or regurgitation went unnoticed and uncompensated for in the testing procedure, the court held that the test was unreliable. In so deciding, the court erred in two respects.

■ First, the court erred in applying a higher standard for admissibility of the evidence because this was a criminal case. While it is true that a higher standard of proof (beyond a reasonable doubt) exists in a criminal case, this higher standard does not extend to the admissibility of evidence.

■ The proponent of breath test evidence need only provide prima facie proof of the trustworthiness of the test's administration. *State v. Dille*, 258 N.W.2d 565, 568 (Minn.1977). Trustworthiness exists when there is a "sufficient indicium of reliability," a showing of the steps needed to ensure reliability. *Id.* The defense is free to argue the possibility of contamination or other irregularity in the taking of a blood alcohol sample, but such an argument goes to the weight of the evidence, and not to its admissibility. *Dick v. Molitor*, 305 Minn. 390, 394, 234 N.W.2d 583, 586 (1975).

■ Second, the court erred in determining that appellant had not met its burden of showing that the test in this case was trustworthy. The trial court held that respondent's breath test results were unreliable and thus inadmissible because of a possible faulty observation period.

The purpose of the observation period is to preclude the possibility that the testimony may be affected by mouth alcohol, resulting from burping or vomiting. *Kooi v. Commissioner of Public Safety*, 363 N.W.2d 487, 489 (Minn.Ct.App.1985). In *Melin v. Commissioner of Public Safety*, 384 N.W.2d 474, 476 (Minn.Ct.App.1986), this court reiterated the position held by the Minnesota Supreme Court in *State, Department of Public Safety v. Habisch*, 313 N.W.2d 13 (Minn.1981), that it is not neces-

sary that all 25 steps of the BCA checklist for breathalyzer tests be followed to ensure reliability of test results. This court held that failure to properly observe does not necessarily invalidate the test results, but it does give the driver an opportunity to explain why this might make the test unreliable. *See Melin,* 384 N.W.2d at 476; *see also Kooi,* 363 N.W.2d at 489.

Therefore, once the proponent of the test has shown that the necessary steps have been taken to ensure reliability, it is incumbent on the driver to suggest a reason why the blood test was untrustworthy. *Dille,* 258 N.W.2d at 568. Here, the only contention as to unreliability of the breath test is that respondent *may* have burped or regurgitated during the observation period. Respondent offered no evidence to suggest that he did in fact burp or regurgitate or any other evidence that the test was untrustworthy or invalid.

In *Fritzke v. Commissioner of Public Safety,* 373 N.W.2d 649, 651 (Minn.Ct.App. 1985), this court held that general allegations that allergy medication affected the test results, without specific proof that it occurred, could not be used to invalidate the breath test results. Similarly, in *Bielejeski v. Commissioner of Public Safety,* 351 N.W.2d 664 (Minn.Ct.App.1984), an appeal from a DWI conviction and an order sustaining revocation of a driver's license, this court rejected appellant's claim that the breath test was invalid because he may have burped or had a fever as "merely an invitation to speculation and contrary to the evidence." *Id.* at 666. Refusing to accept bare allegations of the test's unreliability, this court noted that the driver must produce evidence impeaching the credibility of the test results. *Id.* (citing *Habisch,* 313 N.W.2d at 16).

Again, in *Falaas v. Commissioner of Public Safety,* 388 N.W.2d 40, 42 (Minn.Ct. App.1986), this court held that the fact something *may* have occurred during the observation period to affect the test result was speculation and should not be used without supporting evidence as the basis for rescinding a revocation. Finally, in *Me-lin,* this court noted that failure to properly observe the subject does not invalidate the test results unless the subject *in fact* ingests or regurgitates a substance that affects the results. The *Melin* court stated that the burden was properly placed on the driver to present evidence of such an affecting substance. *Melin,* 384 N.W.2d at 476.

Based on the foregoing, it is clear that the trial court erred in suppressing respondent's breath test. At most, the contention that the observation period was "faulty" goes to the weight and not the admissibility of the test results.

When the State appeals from a pretrial order, a reviewing court will only reverse the determination of the trial court if the State demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial. *See State v. Kim,* 398 N.W.2d 544 (Minn.1987); *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977). In *State v. Galarneault,* 354 N.W.2d 597, 599 (Minn.Ct.App.1984), an appeal by the State from a pretrial suppression order, this court stated that suppression of a breath test had a critical impact on the outcome of a DWI trial.

In this case, respondent is charged with driving while under the influence and alcohol concentration of .10 or more. Consequently, suppression of the breath test has a critical impact on the outcome of this matter. Since suppression of the test was error, the judgment of the trial court must be reversed.

**II.**

Shortly after respondent's arrest, he was asked to perform certain field sobriety tests, which were videotaped and kept at the Columbia Heights police station. The tape was destroyed when a police officer unconnected with this case and inexperienced with videotaping procedures accidentally taped over respondent's test. Respondent asserts that the trial court erred in refusing to dismiss his case or impose

the sanction of acquittal following appellant's destruction of evidence.

Minnesota courts have considered a number of factors in determining whether to dismiss a case due to the prosecution's loss or destruction of evidence, including the possible exculpatory value of the lost or destroyed evidence, *Bielejeski*, 351 N.W.2d at 667, the strength of the State's case even if the evidence was available, *State v. Trimble*, 371 N.W.2d 921, 925 (Minn.Ct. App.1985), and whether or not the destruction was intentional, *State v. Koehler*, 312 N.W.2d 108, 109–10 (Minn.1981).

In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the Supreme Court laid out the standard of materiality which must be met before destruction of evidence will be seen as violative of a defendant's rights and therefore subject to sanctions of dismissal or acquittal. The court stated that the evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.* at 488, 104 S.Ct. at 2534.

■ In this case, the exculpatory value of the evidence is uncertain since no one viewed the tape prior to its destruction. Respondent infers its exculpatory value from police notations and reports accompanying the videotape which indicate that he performed the tests satisfactorily. Appellant argues, however, that the presence of strong evidence against respondent (the .24 alcohol concentration), illustrates the small likelihood that the videotape was exculpatory. In addition, as the trial court noted, both the arresting officer who videotaped respondent and respondent himself are available to testify as to the results of the field sobriety tests, thus providing respondent with the availability of other comparable evidence. Since respondent is unable to meet the *Trombetta* standard, the destruction of the videotape does not constitute grounds for acquittal or dismissal of the case.

## III.

■ Respondent argues that abnormalities in breath tests conducted 19 days after he was tested are indicative of a malfunctioning machine and require suppression of his own test results.

Under *Dille*, appellant must show that the testing procedures were proper *as applied in the particular instance*. *Dille*, 258 N.W.2d at 567. Respondent can point to no abnormality in the machine's functioning as it relates to him. In *Fritzke*, appellant contended that his breath test should be excluded because the commissioner had failed to rebut evidence that the machine needed repairs subsequent to the test. No showing was made indicating that such a problem had any effect on the reliability of the machine or on the results of appellant's test. The court held: "Mere suspicion and speculation as to the validity of the machine or its evaluation are not sufficient to rebut the Commissioner's prima facie case." *Id.* at 651. Respondent's suggestion that his own test results are inaccurate when conducted on a machine which shows evidence of malfunction nearly three weeks later is mere speculation and insufficient to rebut appellant's prima facie showing of test reliability.

## DECISION

1. The trial court erred in excluding respondent's breath test results based on an assertion that respondent "may" have burped or regurgitated prior to testing.

2. The trial court did not err in refusing to consider the inadvertent erasure of videotaped evidence as grounds for dismissal or acquittal.

3. The trial court correctly concluded that faulty simulator solution readings 19 days after respondent's test did not require suppression of respondent's test results.

Affirmed in part, reversed in part and remanded for trial.