**Mark Allen KRAMER, petitioner, Appellant,**

**v.**

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. A04–2506.**

Court of Appeals of Minnesota.

Dec. 6, 2005.

Richard L. Swanson, Chaska, MN, for appellant.

Mike Hatch, Attorney General, Catherine M. Powell, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; KALITOWSKI, Judge; and SHUMAKER, Judge.

## OPINION

MINGE, Judge.

Appellant challenges revocation of his driver's license on the ground that the breath test results from the Intoxilyzer 5000 were not entitled to a presumption of accuracy when the machine, without explanation, printed the wrong date. Because the Commissioner of Public Safety established that the normal testing standards critical for accurate determination of alcohol concentration had been met and that appellant's alcohol concentration exceeded that permitted for drivers of vehicles, appellant had the burden of coming forward with evidence that the date error indicated machine malfunction that affected the validity of the resulting alcohol concentration. Because appellant introduced no such evidence, we affirm.

## FACTS

Appellant Mark Allen Kramer challenges the district court's revocation of his driver's license under the Implied Consent Law, Minn.Stat. §§ 169A.50–.53 (2004). Appellant was arrested for DWI on September 6, 2004, and submitted to an Intoxilyzer 5000 breath test. Deputy Daniel Robert Snow, a Carver County detention deputy and certified Intoxilyzer operator, conducted appellant's breath test. The Intoxilyzer report showed that appellant's alcohol concentration was .12, which resulted in his license revocation.

At the implied consent hearing, Snow testified that before he administered the Intoxilyzer test he checked the appellant's

mouth for regurgitation or belching and turned off his radio to prevent interference with the testing equipment, and that the Intoxilyzer performed the appropriate diagnostic checks. The record also indicates that before the test was administered, the arresting officer observed the appellant for 15–20 minutes. Based on two separate readings, using two separate mouth pieces, Snow determined appellant's alcohol concentration level was .12. Snow testified that, in his opinion, the diagnostic results were within the proper limits and that the Intoxilyzer result was valid and reliable.

Snow further testified that, a week after administering the test, he realized that the date printed on the Intoxilyzer report was incorrect. All other relevant information, however, including the time of the test, was correct. At his supervisor's direction, Snow prepared a supplemental report stating that the correct test date was September 6, 2004, the date of appellant's arrest, not September 16, 2004, the date reflected on the report print-out. Appellant did not object when the Intoxilyzer report was admitted into evidence. However, appellant contended that because the commissioner did not establish that the date error did not affect the measuring functions of the Intoxilyzer, the test results were not prima facie reliable and should be rejected. The district court rejected appellant's argument. This appeal followed.

## ISSUE

Was it error for the district court to place the burden on appellant to establish that the wrong date in the printed results from the Intoxilyzer compromised the otherwise admissible results of that machine's test of appellant's breath?

## ANALYSIS

■■■ The material facts of this case are not in dispute. Rather, appellant as-

serts that the district court erred, as a matter of law, by concluding that the Intoxilyzer report that is the basis for his conviction is prima facie reliable. While a district court's findings of fact will not be set aside unless clearly erroneous, *Schultz v. Comm'r of Pub. Safety*, 393 N.W.2d 373, 375 (Minn.App.1986), a reviewing court will not give deference to the district court's application of the law when the material facts are not in dispute. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). Therefore, we will review the district court's order de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992). Finally, we note that the Implied Consent Law is considered remedial and liberally construed upon review. *Fritzke v. Comm'r of Pub. Safety*, 373 N.W.2d 649, 650 (Minn.App. 1985).

■■■ Because proceedings under the Implied Consent Law are civil in nature, the commissioner need only demonstrate that revocation of driving privileges was appropriate by a preponderance of the evidence. *Llona v. Comm'r of Pub. Safety*, 389 N.W.2d 210, 211 (Minn.App.1986). The courts use a burden-shifting analysis to make determinations under the Implied Consent Law. The commissioner must make a prima facie case that the test is reliable and "that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977) (citations omitted); *see Tate v. Comm'r of Pub. Safety*, 356 N.W.2d 766, 767–68 (Minn.App.1984). If sufficient, the driver must come forward with evidence disputing the validity and trustworthiness of the breath test. *Falaas v. Comm'r of Pub. Safety*, 388 N.W.2d 40, 42 (Minn.App. 1986). "If the prima facie showing of a test's reliability is challenged, the judge must rule upon the admissibility in light of

the entire evidence." *Bond v. Comm'r of Pub. Safety,* 570 N.W.2d 804, 806 (Minn. App.1997) (quotation omitted).

*Prima Facie Requirements*

The commissioner meets his burden by demonstrating that a certified Intoxilyzer operator administered the test, and that diagnostic checks showed that the Intoxilyzer machine was in working order and the chemicals used were in proper condition. *Zern v. Comm'r of Pub. Safety,* 371 N.W.2d 82, 83 (Minn.App.1985); *see also State v. Nelson,* 399 N.W.2d 629, 632 (Minn.App.1987), *review denied* (Minn. Apr. 17, 1987); *Ahrens v. Comm'r of Pub. Safety,* 396 N.W.2d 653, 656 (Minn.App. 1986). The certified operator conducts two diagnostic tests to check that the Intoxilyzer is in working condition. First, the operator uses air "blanks" to check for contamination in the room air, and then checks the chemical levels to make sure they meet the calibration standards. "If the two tests give the expected results, this would seem to be almost incontrovertible proof not only that the chemicals are proper but that the instrument is in working order." *Bielejeski v. Comm'r of Pub. Safety,* 351 N.W.2d 664, 666 (Minn.App. 1984) (quotation omitted).

In this case, appellant acknowledges that the Intoxilyzer report is from his September 6, 2004, arrest, and did not question Snow's capabilities as a certified Intoxilyzer operator. Moreover, appellant does not challenge that Snow conducted air-blank checks, or that the chemical levels were within the expected ranges. Therefore, the evidence submitted by respondent establishes a prima facie case under current standards. *See Zern,* 371 N.W.2d at 83; *Bielejeski,* 351 N.W.2d at 666. Appellant contends that, because the Intoxilyzer report had the wrong date, the entire test must be rejected as unreliable.

However, appellant confuses respondent's requirement to present a prima facie case with appellant's burden to refute that prima facie showing.

*Refuting Prima Facie Case*

"Once a prima facie showing of trustworthy administration has occurred, it is incumbent upon defendant to suggest a reason why the ... test was untrustworthy." *Tate,* 356 N.W.2d at 768 (quotation omitted). Specifically, the driver must present some evidence beyond mere speculation that questions the trustworthiness of the Intoxilyzer report. *Bielejeski,* 351 N.W.2d at 666. Typically, such an inquiry affects the weight of the report, not its admissibility. *Nelson,* 399 N.W.2d at 631.

The driver may challenge the sufficiency of the prima facie case in a number of ways. For example, "the defense is free to argue the possibility of contamination or other irregularity in the taking of a blood alcohol sample," *id.,* or the driver may allege that the Intoxilyzer gave a false reading because of a low chemical level. However, merely alleging that the chemical testing solution was low does not automatically render the test unreliable. *Johnson v. Comm'r of Pub. Safety,* 374 N.W.2d 577, 579–80 (Minn.App. 1985). "Instead, there must be some indication that the low reading would unduly exaggerate the test results." *Ahrens,* 396 N.W.2d at 657. Therefore, if the certified Intoxilyzer operator testifies that the machine is testing high, the commissioner's prima facie case is refuted. *Schultz,* 393 N.W.2d at 375. If the court finds that the high reading renders the driver's alcohol concentration under the legal limit, the proper action is to rescind the license revocation. *Id.*

The driver may also assert that the statutory requirements were not met. In *Olson v. Comm'r of Pub. Safety,* the

driver challenged his license revocation by suggesting that an unauthorized individual took his blood sample for testing. 513 N.W.2d 491, 492 (Minn.App.1994). The driver's argument rested on language in Minn.Stat. § 169.123, subd. 3 (1992), which provides a list of individuals competent to withdraw blood for testing purposes. *Olson*, 513 N.W.2d at 493. The court held that, since the driver did not challenge the validity of the testing procedures nor suggest the existence of an improper result, the driver's license revocation could not be rescinded based simply on the allegation that the wrong person took the sample. *Id.* at 493.

■ Establishing that some impropriety or irregularity occurred during the observation period which would render the test result invalid is also a proper basis for challenging the test's reliability. The observation period is recommended by the Bureau of Criminal Apprehension (BCA) as a means to ensure that the Intoxilyzer test results are accurate. *Nelson*, 399 N.W.2d at 630. The BCA recommends a pre-test observation period of 15–20 minutes to allow for elimination of possible contamination from the mouth cavity. *Id.* During this time, the driver is not to ingest anything, and if the driver regurgitates or belches, the Intoxilyzer operator should wait an additional 15 minutes before administering the test. *Id.* However, "[a] slight interruption of the observation period or a less than perfect observation does not invalidate the test unless the driver has ingested or regurgitated a substance that affects the results, and the burden is on the driver to present such evidence." *Falaas*, 388 N.W.2d at 42.

■ If the certified Intoxilyzer operator does not personally conduct the pre-test observation period, yet testifies to the test's reliability, the driver may refute that showing with evidence that the officer who did conduct the observation did so in a faulty manner. Also, if the observing officer is not trained in pre-test observation, and testifies that she did not understand the purpose of the observation period, the commissioner's prima facie case of reliability is refuted. *McGregor v. Comm'r of Pub. Safety*, 386 N.W.2d 339, 340–41 (Minn.App.1986).

■ Thus, there exist myriad ways for the driver to challenge the revocation of his driver's license under the Implied Consent Law. However, arguing that something *might* have occurred is mere speculation and insufficient unless supported by additional evidence. *Falaas*, 388 N.W.2d at 42. This court requires that the driver establish a relationship between the alleged error and the validity of the results.

In this case, appellant does not contend that a faulty observation period, invalid testing procedures, or improper diagnostic checks produced an unreliable Intoxilyzer report. He only observed that the date "September 16, 2004," instead of "September 6, 2004," appears at the top of the Intoxilyzer report. Appellant did not present any evidence that such a misprint was an indication that the testing mechanism was not working properly, nor did appellant present evidence controverting Snow's testimony that in his opinion, as a certified Intoxilyzer operator, the machine was in working order. Appellant simply asserts that the misprinted date is indicative of a larger problem that so undermines the validity and trustworthiness of the Intoxilyzer report as to negate its prima facie status. This is not enough.

## DECISION

We conclude that the district court properly determined that respondent presented a prima facie case and that appellant failed

to meet his burden to refute such a showing.

**Affirmed.**