*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0377**

Daniel Michael Lieser, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 25, 2014
Affirmed
Kirk, Judge**

Stearns County District Court
File No. 73-CV-13-4956

Robert E. Pottratz, Melrose, Minnesota (for appellant)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

On appeal from the district court's order sustaining the revocation of his driver's license, appellant argues that: (1) the district court's finding that he did not successfully rebut the validity and trustworthiness of the blood test is clearly erroneous; (2) the police

officer did not have probable cause to believe he was under the influence of alcohol or a controlled substance; and (3) he did not consent to alcohol-concentration testing. We affirm.

**FACTS**

At approximately 12:27 a.m. on January 20, 2013, Stearns County Sheriff's Deputy Andrew Struffert observed a vehicle that was traveling at a high rate of speed veer off the road on a sharp right-hand curve and drive into a farm field. Deputy Struffert stopped his squad car near the curve and observed an individual, who was later identified as appellant Daniel Michael Lieser, walking away from the vehicle. Deputy Struffert called out to Lieser, and Lieser walked toward the squad car. He asked Lieser what had happened, and Lieser told him that he had too much to drink. Deputy Struffert asked Lieser for his driver's license, and Lieser fumbled with his wallet for approximately 15-30 seconds before removing his driver's license.

Deputy Struffert asked Lieser to perform field sobriety tests, and Lieser agreed. Lieser passed the horizontal gaze nystagmus test, but failed the one-legged stand and walk-and-turn tests. Finally, Deputy Struffert asked Lieser to provide a preliminary breath test. Lieser complied, and the test displayed a reading of .056. Deputy Struffert informed Lieser that he was not going to arrest him for driving while impaired (DWI) for being under the influence of alcohol.

Deputy Struffert asked Lieser if he took any medication or drugs. Lieser replied that he is prescribed Trazodone and Ritalin, and he took his dose of Trazodone at approximately 12:00 p.m. that day. Deputy Struffert knew that the prescription label for

2

Trazodone warns the drug user that it may cause drowsiness and cautions against driving under the influence. Deputy Struffert informed Lieser that he was under arrest for DWI.

Deputy Struffert read Lieser the implied-consent advisory, and asked Lieser if he understood. Lieser replied, "Yes." Deputy Struffert asked Lieser if he wanted to consult with an attorney, and Lieser replied, "Yes." Deputy Struffert provided Lieser with two phone books and access to a telephone. Lieser looked through the phone book for a phone number, but then told Deputy Struffert that he had a difficult time reading without his reading glasses. Lieser provided Deputy Struffert with the name of the attorney he was looking for, and Deputy Struffert helped him look through the phone book. After they were unable to find that attorney's phone number, Lieser informed Deputy Struffert that it was a waste of time to contact an attorney at that hour because no one would answer. Deputy Struffert asked Lieser if he needed more time, and Lieser replied, "No." He then asked Lieser if he would take a blood test, and Lieser replied, "Yes." The Minnesota Bureau of Criminal Apprehension (BCA) tested Lieser's blood sample and found less than .01 milligrams per liter of methamphetamine. Deputy Struffert issued a citation to Lieser for fourth-degree DWI and driving too fast for the conditions.

In May, respondent commissioner of public safety mailed notice to Lieser that his driver's license was revoked for 90 days. Lieser filed an implied-consent petition, requesting that the district court rescind the revocation of his driver's license. Following a hearing, the district court sustained the revocation of Lieser's driver's license. This appeal follows.

3

**D E C I S I O N**

This court will not set aside a district court's findings of fact unless they are clearly erroneous. *Thorud v. Comm'r of Pub. Safety*, 349 N.W.2d 343, 344 (Minn. App. 1984). We give due regard to the district court's opportunity to judge the credibility of witnesses. *Id.* We will overturn a district court's conclusions of law only when the district court "erroneously construed and applied the law to the facts of the case." *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App. 1986).

**I.    The district court's finding that Lieser did not successfully rebut the validity and trustworthiness of the blood test is not clearly erroneous.**

Under Minn. Stat. § 169A.52, subd. 4(a) (2012), the commissioner of public safety shall revoke an individual's driver's license "[u]pon certification by the peace officer that there existed probable cause to believe the person had been driving . . . a motor vehicle . . . and that the person submitted to a test and the test results indicate . . . the presence of a controlled substance." Methamphetamine is a controlled substance under the statute. Minn. Stat. § 152.02, subd. 3 (2012).

In implied-consent proceedings, the commissioner must establish a prima facie case that the chemical test is reliable. *Kramer v. Comm'r of Pub. Safety*, 706 N.W.2d 231, 235 (Minn. App. 2005). To meet that burden, the commissioner must prove reliability by a preponderance of the evidence. *Renner v. Comm'r of Pub. Safety*, 373 N.W.2d 628, 630 (Minn. App. 1985). The fact that a qualified person drew the blood sample using the testing kit provided by the BCA is sufficient to establish the prima facie

4

admissibility of the test results. *See State v. Dille*, 258 N.W.2d 565, 568 (Minn. 1977); *State v. Pearson*, 633 N.W.2d 81, 85 (Minn. App. 2001).

Once the commissioner has established a prima facie case, the burden shifts to the petitioner to dispute "the validity and trustworthiness" of the test. *Kramer*, 706 N.W.2d at 235. To do so, the petitioner may not solely rely on speculation. *Bielejeski v. Comm'r of Pub. Safety*, 351 N.W.2d 664, 666 (Minn. App. 1984). The petitioner must submit specific evidence that the test results were invalid. *See Fritzke v. Comm'r of Pub. Safety*, 373 N.W.2d 649, 651 (Minn. App. 1985) (stating that the petitioner's general allegations that the allergy medication he consumed affected the test results could not be used to invalidate his alcohol-concentration test results "without specific proof that it occurred"). Whether a party has rebutted a presumption is generally a question of fact. *Kluball v. Am. Family Mut. Ins. Co.*, 706 N.W.2d 912, 916 (Minn. App. 2005).

Here, the district court found that the commissioner met its prima facie burden of demonstrating the reliability of the BCA's report containing the results of Lieser's blood test. In support of its decision, the district court cited the testimony from Lieser's expert witness, forensic scientist Thomas Burr, who acknowledged that the BCA lab found methamphetamine in Lieser's blood sample. The district court determined that Minn. Stat. § 169A.52, subd. 4(a), only requires the presence of a prohibited controlled substance, but does not specify the amount of the controlled substance that is required for conviction. The district court therefore concluded that Lieser failed to rebut the validity and trustworthiness of the BCA's test results.

Lieser argues that he successfully rebutted the state's prima facie case by demonstrating that the BCA's testing of his blood did not show the presence of methamphetamine. He contends that "presence" of a controlled substance, as the word is used in Minn. Stat. § 169A.52, subd. 4(a), means the presence of a "measureable amount" of a controlled substance. Lieser argues that Minn. Stat. § 169A.52, subd. 4(a), must be read *in pari materia* with Minn. Stat. § 169A.20, subd. 1(7) (2012), which provides that a person is guilty of DWI if he drives when "the person's body contains any amount of a controlled substance," and Minn. Stat. § 609.21, subd. 1(6) (2012), which provides that a person is guilty of criminal vehicular homicide if he causes the death of another as the result of operating a vehicle "in a negligent manner while any amount of a controlled substance . . . is present in the person's body." Relying on Burr's testimony, Lieser argues that the evidence at trial showed that there was no measureable amount of methamphetamine in his body.

We disagree. Under the plain language of Minn. Stat. § 169A.52, subd. 4(a), the commissioner may revoke an individual's driver's license if the test reveals "the presence of a controlled substance." The word "presence" is defined as "[t]he state or fact of being present; current existence or occurrence." *The American Heritage Dictionary* 1393 (5th ed. 2011). Moreover, the doctrine of *in pari materia* does not apply here because the statute's language is unambiguous, and that doctrine only applies when a statute's language is ambiguous. *See State v. Lucas*, 589 N.W.2d 91, 94 (Minn. 1999) ("The doctrine of *in pari materia* is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the

6

meaning of ambiguous statutory language."). While we share Lieser's concern that the statute encompasses situations where only a de minimis quantity of methamphetamine is detected in the test sample, the plain language of the statute is clear.

The only evidence that Lieser presented during the trial to attempt to rebut the state's prima facie case was Burr's expert testimony. Burr testified that the amount of methamphetamine that the BCA identified in Lieser's blood sample was below the level that can be quantified, which he asserted means that the BCA "really didn't confirm its presence." But Burr acknowledged that the BCA's report stated that it detected methamphetamine in Lieser's blood sample. Accordingly, the district court's finding that Lieser did not rebut the validity and trustworthiness of the blood test is not clearly erroneous.

## II. Deputy Struffert had probable cause to believe Lieser was under the influence of alcohol or a controlled substance.

"Probable cause to arrest a person for DWI exists when the facts and circumstances available at the time of arrest reasonably warrant a prudent and cautious officer to believe that an individual was driving under the influence." *Reeves v. Comm'r of Pub. Safety*, 751 N.W.2d 117, 120 (Minn. App. 2008). In reviewing a probable cause determination, this court considers whether the police officer "had a substantial basis for concluding that probable cause existed at the time of invoking the implied-consent law." *Groe v. Comm'r of Pub. Safety*, 615 N.W.2d 837, 840 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000). In doing so, we examine the totality of the circumstances. *Eggersgluss v. Comm'r of Pub. Safety*, 393 N.W.2d 183, 185 (Minn. 1986). We give

7

deference to the officer's experience and judgment. *Delong v. Comm'r of Pub. Safety*, 386 N.W.2d 296, 298 (Minn. App. 1986), *review denied* (Minn. June 13, 1986).

Lieser argues that Deputy Struffert did not have any basis to conclude that the prescription drugs that he was taking affected his driving. Lieser further contends that a reasonable and prudent officer would conclude that his difficulty in following instructions was related to his ADHD.

Here, Deputy Struffert observed Lieser drive his vehicle off the road at approximately 12:27 a.m., which is a time of day when there generally are more impaired drivers on the road. *See State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998). When Deputy Struffert spoke with Lieser immediately after the accident, Lieser told him that he had had too much to drink and fumbled with his wallet for 15-30 seconds in an attempt to remove his driver's license. During the field sobriety tests, Lieser appeared to be slow to understand instructions and was unable to complete several of the tests. Deputy Struffert also noticed lack of smooth pursuit in both of his eyes. The road was icy and snowy, but Deputy Struffert had Lieser perform the field sobriety tests in an area with hard-packed snow that was not icy. Lieser's breath test revealed a .056 alcohol concentration, and he admitted to taking his prescription medication earlier that day. Based on his experience, Deputy Struffert knew that Trazodone causes drowsiness and has a warning label cautioning against driving under the influence. Under the totality of the circumstances, Deputy Struffert had probable cause to believe that Lieser was under the influence of alcohol or a controlled substance.

### III.  Lieser consented to alcohol-concentration testing.

The United States and Minnesota Constitutions prohibit warrantless searches and seizures. U.S. Const. amend. IV; Minn. Const. art I, § 10.  The collection and testing of a person's blood sample constitutes a search under the Fourth Amendment to the United States Constitution and therefore requires a warrant or an exception to the warrant requirement.  *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989).  The police do not need a warrant to search a person's blood if the person consents to the search.  *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

For the consent exception to apply, the state must show that the defendant freely and voluntarily consented to the search.  *Id.*  The district court must examine the totality of the circumstances to determine whether the defendant voluntarily consented.  *Id.*; *see also State v. Harris*, 590 N.W.2d 90, 102 (Minn. 1999).  The relevant circumstances include "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said."  *Brooks*, 838 N.W.2d at 569 (quotation omitted).  The nature of the encounter includes what led the police to suspect the defendant had been driving under the influence, whether police read the defendant the implied-consent advisory, and whether the defendant had the opportunity to consult with an attorney.  *Id.*  "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test."  *Id.* at 570.  And a defendant's consent may "be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned."  *Id.* at 569.

Lieser argues that his consent to the blood test was coerced under the totality of the circumstances because he suffers from ADHD, had not taken his medication for several hours, and his attempt to contact an attorney was cut short by Deputy Struffert. We disagree. Deputy Struffert read Lieser the implied-consent advisory, and when Lieser requested to consult with an attorney, Deputy Struffert provided him with two phone books and access to a telephone. Lieser attempted to find the name of a particular attorney, and Deputy Struffert assisted him when he was initially unable to find the attorney's name. Lieser then informed Deputy Struffert that he no longer wanted to contact an attorney. Under the totality of the circumstances, Lieser consented to the blood test. As the supreme court held in *Brooks*, Lieser's consent was not coerced simply because he agreed to take the test after Deputy Struffert read the implied-consent advisory to him. *See id.* at 570. And there is nothing in the record to indicate that Lieser "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *See id.* at 571 (quotation marks omitted).

**Affirmed.**

10