# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-1440

Derek Alexander Knapp, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed May 19, 2025**
**Reversed**
**Ede, Judge**

Washington County District Court
File No. 82-CV-23-859

Robert M. Christensen, Robert M. Christensen, P.L.C., Minneapolis, Minnesota (for respondent)

Keith Ellison, Attorney General, Nicholas R. Moen, Ryan Pesch, Assistant Attorneys General, St. Paul, Minnesota (for appellant)

Considered and decided by Harris, Presiding Judge; Ede, Judge; and Bentley, Judge.

## SYLLABUS

1.      Under *Vondrachek v. Comm'r of Pub. Safety*, 906 N.W.2d 262 (Minn. App. 2017), *rev. denied* (Minn. Feb. 28, 2018), the Minnesota Commissioner of Public Safety satisfies their prima facie burden to establish that DataMaster DMT-G (DMT) evidentiary breath-test results are admissible by introducing evidence that a certified DMT operator administered the test and that diagnostic checks showed that the DMT testing device was in working order.

2. It is an abuse of discretion for a district court to determine that DMT test results are unreliable and to rescind the revocation of driving privileges based solely on evidence of an imperfect or improper pretest observation period, without evidence that the driver ingested something or otherwise experienced a bodily function during the observation period and without evidence that the driver's ingestion or bodily function affected the test results.

## OPINION

**EDE**, Judge

In this appeal from the district court's order rescinding the revocation of respondent's driving privileges, appellant argues that the court abused its discretion by determining that appellant failed to demonstrate a prima facie case for the admission of chemical breath-test results and by determining that the test results were unreliable. Because appellant met their prima facie burden of reliability to introduce the test results and respondent failed to provide evidence that the test was unreliable, we conclude that the district court abused its discretion and therefore reverse.

## FACTS

Appellant Minnesota Commissioner of Public Safety revoked respondent Derek Alexander Knapp's driving privileges after law enforcement stopped Knapp's car in February 2023. Knapp challenged the license revocation. The undisputed facts summarized below stem from the record of the implied-consent hearing and the district court's order rescinding revocation.

***Arrest, DataMaster DMT-G (DMT) Test*, and Revocation**

Law enforcement stopped Knapp to investigate an equipment violation, observed indicia of impairment, and called a deputy to the scene to help investigate further. The deputy asked Knapp to perform field sobriety tests. Knapp did not exhibit signs of impairment during two of the tests, but did exhibit such signs during the horizontal gaze nystagmus test. To confirm the signs of impairment that he had observed, the deputy requested that Knapp complete a preliminary breath test, and Knapp agreed. The preliminary breath test results showed that Knapp had an alcohol concentration of 0.09. The deputy arrested Knapp and transported him to jail to conduct an evidentiary breath test using the DMT device.

When the deputy and Knapp arrived at the jail, they were asked to wait in the deputy's squad car while another individual exited the intake area. During that time, the deputy was sitting in the driver's seat and Knapp was in the back passenger seat. There was a Plexiglass partition between them that had an opening in the middle. As they waited to enter the jail, the deputy asked Knapp to open his mouth and flip his tongue.

At midnight, while still in the squad car, the deputy read Knapp an advisory about the breath test. At 12:02 a.m., the deputy finished reading the advisory. Afterward, the deputy and Knapp walked into the intake area. Once inside, the deputy told a correctional officer "that he wanted a test conducted at 12:15 [a.m.] on the dot, as the observation period had commenced." While Knapp was searched, the deputy walked over to a computer in the same room as Knapp and the correctional officer.

The correctional officer administered the DMT test to Knapp. Before collecting a breath sample from Knapp, the DMT testing device successfully completed a diagnostic test, four air-blank tests, and a control-sample check. Knapp then provided two breath samples. The breath test results reflected an alcohol concentration of 0.08. On that basis, the commissioner revoked Knapp's driving privileges.[1]

### Implied-Consent Hearing

Knapp petitioned the district court for judicial review of the revocation decision. He requested that his driving privileges be reinstated because, among other things, the testing method "was not valid or reliable, or the test result obtained was not accurately evaluated."[2] At the implied-consent hearing, Knapp's counsel clarified that Knapp was challenging the admissibility of the DMT test results—not the validity of the test—and that Knapp's argument focused on the lack of an adequate observation period. The district court heard testimony from the deputies involved in Knapp's arrest and from the correctional officer who administered the DMT test to Knapp.

The deputy testified as follows. Before a driver can submit to a DMT test, law enforcement must conduct a 15-minute observation period. During this period, an officer looks for burping, belching, or vomiting. The officer can perform a mouth check, during which the officer opens the driver's mouth to make sure there is no vomit or other obstruction "in the mouth that could retain alcohol." The officer must watch the driver the

---

[1] *See* Minn. Stat. § 169A.52, subd. 4 (2024).

[2] *See* Minn. Stat. § 169A.53, subd. 3(b)(10) (2024).

entire time and be within earshot of them. Officers are trained that they should not be distracted during this time. The deputy did not recall the length of the pretest observation period in this case, but noted that his training guidelines require a 15-minute observation period "at minimum." During the observation period, the deputy listened to Knapp and looked at him through the rearview mirror. The deputy did not observe any burping, belching, or vomiting.

The correctional officer testified that she is a trained and certified DMT operator. She received her training from the Minnesota Bureau of Criminal Apprehension and, on the date of the incident, her DMT certification was current. The correctional officer stated that the DMT testing device successfully completed a diagnostic test, four air-blank tests, and a control-sample check. Following this testimony, the commissioner moved for the admission of the DMT test results into evidence. Knapp's counsel objected. The district court acknowledged counsel's objection, but still received the exhibit.

### Post-Hearing Arguments and District Court Decision

After the hearing, both parties submitted written arguments to the district court. Knapp asserted that the DMT test results were inadmissible because the commissioner had "failed to establish a prima facie case that the test is reliable and that its administration conformed to the procedures necessary to ensure reliability." He maintained that the deputy's body-camera footage contradicts the deputy's testimony that the deputy properly observed Knapp during the 15-minute pretest observation period because the footage shows that the deputy was not close enough to Knapp to detect burping or belching, that Knapp's face was shielded from the deputy's view, and that the deputy could not see

Knapp's mouth because the deputy was facing away from Knapp "in the front seat of his darkened squad car with a seat partition between."

The commissioner contended that their prima facie burden to establish the admissibility of the DMT test results was met. Quoting *Vondrachek v. Comm'r of Pub. Safety*, 906 N.W.2d 262, 273 (Minn. App. 2017), *rev. denied* (Minn. Feb. 28, 2018), the commissioner argued that caselaw requires only a showing "that a certified DMT operator administered the test and that the diagnostic tests showed the DMT to be in working order." Because the commissioner introduced evidence to meet that standard, the commissioner maintained that they had met their prima facie burden to establish that the DMT test results were admissible. The commissioner also asserted that, even if there were a deficiency in the observation period, such a deficiency would only go to the weight of the test-results evidence, not its admissibility.

The district court filed an order rescinding the revocation of Knapp's driving privileges. Reasoning that the evidence about the observation period raised "questions as to the reliability of the test results," the district court determined that "[t]he record, which includes video evidence, does not establish that [the deputy] continuously observed [Knapp] for the duration of the observation period beginning at 12 a.m." The district court found that the deputy was facing away from Knapp in the squad car, that the deputy had to rely on his rearview mirror, that the deputy's perspective was limited by the Plexiglass partition, and that the deputy's location relative to Knapp was unclear after they entered the jail. Based on those findings, the district court ruled that the commissioner had not established that the deputy had been "able to observe burping or belching 15 minutes prior

6

to the administration of the DMT test." Determining that the commissioner had "failed to demonstrate a prima facie case that the administration of the test conformed to the procedures necessary to ensure reliability" and that the DMT test results were therefore unreliable, the district court rescinded the revocation of Knapp's driving privileges.

The commissioner appeals.

## ISSUE

Did the district court abuse its discretion by rescinding the revocation of Knapp's driving privileges?

## ANALYSIS

The commissioner challenges the district court's order rescinding the revocation of Knapp's driving privileges, arguing that the court abused its discretion because the commissioner met their prima facie burden of establishing that the DMT test results are admissible and because Knapp did not introduce any evidence to counter their prima facie case.

"Rulings on evidentiary matters rest within the sound discretion of the district court and will not be reversed on appeal absent a clear abuse of discretion." *Vondrachek*, 906 N.W.2d at 272 (quoting *In re Source Code Evidentiary Hearings*, 816 N.W.2d 525, 537 (Minn. 2012)). The abuse-of-discretion standard also applies to our review of the district court's substantive decision to rescind or sustain the revocation of driving privileges. *See Thordson v. Comm'r of Pub. Safety*, 10 N.W.3d 310, 315 (Minn. App. 2024) (explaining that, "in reviewing a district court's compliance with statutory requirements and evaluation of evidence—which presents a mixed question of law and fact—we have traditionally

7

applied an abuse-of-discretion standard of review," and that, "[b]ecause the abuse-of-discretion standard encompasses correction of clearly erroneous findings of fact, this approach is consistent with our clear-error review of a district court's factual findings underlying an implied-consent decision"); *see also Short v. Comm'r of Pub. Safety*, 422 N.W.2d 40, 43 (Minn. App. 1988) (applying an abuse-of-discretion standard of review in affirming a district court's order sustaining the revocation of driving privileges). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Vangrevenhof*, 941 N.W.2d 730, 736 (Minn. 2020) (quotation omitted).

Before turning to the merits, we acknowledge the commissioner's additional contention that "[t]he district court abused its discretion in *suppressing* the DMT test [results] because the district court's decision was contrary to established law and precedent." (Emphasis added.) During the implied-consent hearing, however, the district court "note[d] [Knapp's] arguments . . . that [he was] challenging the observation period, but . . . *receive[d]* [the DMT test results] into evidence." (Emphasis added.) And in its order, the district court reiterated that it had "*received* into evidence from [the commissioner] . . . the DMT test [results]." (Emphasis added.) Thus, we do not analyze whether the district court abused its discretion by "suppressing" the DMT test results because the court did not do so—rather, it received the DMT test results into evidence.

That said, despite the district court's repeated statements that it had received the DMT test results into evidence, the court also wrote in its order that the commissioner had "failed to demonstrate a prima facie case that the administration of the test conformed to

8

the procedures necessary to ensure reliability." The district court's reasoning appears to have conflated the admissibility of the DMT test results with the court's substantive evaluation of the test results' weight. In the interest of clarity and because the commissioner's prima facie burden relates to admissibility, we first (A) review whether the district court abused its discretion in determining that the commissioner did not meet that burden. We then review the district court's substantive evaluation of the weight of the DMT test-results evidence, analyzing (B) whether the court abused its discretion by determining that the test-results evidence was unreliable and by rescinding the revocation of Knapp's driving privileges based solely on evidence of an imperfect pretest observation period.

## A. The district court abused its discretion in determining that the commissioner had not met their prima facie burden to demonstrate the admissibility of the DMT test results.

The commissioner argues that the district court abused its discretion in determining that they failed to meet their prima facie burden of proving admissibility, despite evidence that "the test was administered by a trained and certified DMT operator," and evidence that "the instrument was functioning correctly as demonstrated by its successful completion of the diagnostic test." Knapp responds that the district court correctly determined that the commissioner did not meet the burden of proving that the test was reliable because the deputy did not conduct a complete pretest observation period. We agree with the commissioner.

"Admissibility of a chemical test result depends upon 'prima facie proof of the trustworthiness of the test's administration.'" *Vondrachek*, 906 N.W.2d at 272 (quoting *State v. Dille*, 258 N.W.2d 565, 568 (Minn. 1977)). "The commissioner must make a prima

9

facie case that the test is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *Id.* (quotation omitted). In *Vondrachek*, we reaffirmed our holding in *Kramer v. Comm'r of Pub. Safety*, 706 N.W.2d 231 (Minn. App. 2005), that the commissioner meets their prima facie burden of reliability "by showing that a certified [DMT] operator administered the test and that diagnostic checks showed that the [DMT] machine was in working order and the chemicals used were in proper condition." *Vondrachek*, 906 N.W.2d at 272 (alteration in original) (quoting *Kramer*, 706 N.W.2d at 236).[3]

During the implied-consent hearing in this case, the commissioner elicited testimony about the correctional officer's training and the condition of the machine. The correctional officer testified that she is a trained and certified DMT operator and that, at the time of the test, her DMT certification was up to date. And the correctional officer testified that the machine successfully completed the diagnostic check, the four air-blank tests, and the control-sample test. Faced with similar facts in *Vondrachek*, we concluded that the commissioner had met their prima facie burden. 906 N.W.2d at 273.

In *Vondrachek*, the officer who administered the test was a properly trained and certified DMT operator. *Id.* Before appellant driver provided a breath sample, the DMT testing device performed a diagnostic check and ran air-blank tests, which produced results within acceptable limits. *Id.* at 267, 273. On those facts, we concluded that the commissioner "met its burden by showing that [the officer who administered the test] was

_____

[3] *See also* Minn. Stat. § 634.16 (2024).

a certified operator and that the machine was in working order." *Id.* at 273. In *Kramer*, we similarly held that the commissioner met their prima facie burden when they demonstrated "that a certified Intoxilyzer operator administered the test" and provided evidence "that diagnostic checks showed that the Intoxilyzer machine was in working order and the chemicals used were in proper condition."[4] *Kramer*, 706 N.W.2d at 236; *see also State, Dep't of Pub. Safety v. Habisch*, 313 N.W.2d 13, 15 (Minn. 1981) (stating that the supreme court has held that "testimony of the reading obtained by a Breathalyzer test conducted by a certified operator may be admitted without antecedent expert testimony if it is established that the machine was in proper working order and the chemicals in proper condition" (citing *State, City of St. Louis v. Quinn*, 182 N.W.2d 843 (Minn. 1971))).

Knapp nonetheless insists that the commissioner did not meet their prima facie burden because the deputy did not conduct a complete pretest observation period. But we have "consistently indicated that a deficiency in observation of the subject does not of itself invalidate the test." *Melin v. Comm'r of Pub. Safety*, 384 N.W.2d 474, 476 (Minn. App. 1986). Several of our cases illustrate this point.

For example, in *Falaas v. Comm'r of Pub. Safety*, we reversed the district court's decision to rescind the revocation of respondent's driving privileges based on an inadequate observation period because the commissioner had met their prima facie burden. 388 N.W.2d 40, 42 (Minn. App. 1986). Likewise, in *Melin*, we held that the district court

---

[4] Both the Intoxilyzer and the DMT are approved methods of determining the alcohol concentration of a breath sample and both employ infrared technology to measure alcohol concentration. *See* Minn. R. 7502.0425, subp. 1-3 (2023).

"erred in requiring the Commissioner to show a continuous 15-minute period of observation in order to make a prima facie showing of reliability." 384 N.W.2d at 476. And in *State v. Wickern*, we agreed with the state's argument that the district court "erred in suppressing the [breath] test because an alleged deficiency in the observation period goes solely to the weight to be given to the test by the trier of fact, and does not preclude the admissibility of the test results." 411 N.W.2d 597, 599 (Minn. App. 1987). We therefore disagree with Knapp's argument that the commissioner must introduce evidence of a proper pretest observation period to meet their prima facie burden of reliability and admissibility for DMT test results.[5]

Instead, we hold that, under *Vondrachek*, the commissioner satisfies their prima facie burden to establish that DMT evidentiary breath-test results are admissible by introducing evidence that a certified DMT operator administered the test and that diagnostic checks showed that the DMT testing device was in working order. Here, because the commissioner introduced evidence that the correctional officer was a certified DMT

---

[5] During oral argument before this court, Knapp referred to a recent North Dakota Supreme Court opinion, asserting without further citation that the decision supports his contention that the commissioner must introduce evidence of a proper pretest observation period to meet their prima facie burden. "Arguments are forfeited if they are presented in a summary and conclusory form, do not cite to applicable law, and fail to analyze the law when claiming that errors of law occurred." *State v. German*, 929 N.W.2d 466, 477 (Minn. App. 2019) (quotation omitted). And even absent forfeiture, while such extraterritorial state appellate authority may be persuasive, it is not binding. *See State v. Chauvin*, 955 N.W.2d 684, 695 (Minn. App. 2021) (holding that "a precedential opinion of this court is binding authority for this court"), *rev. denied* (Minn. Mar. 10, 2021); *see also Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. App. 2003) (explaining that this court is bound by decisions of the Minnesota Supreme Court and the United States Supreme Court).

operator and that the DMT testing device was functioning properly, we conclude that the district court abused its discretion by determining that the commissioner failed to meet their prima facie burden.

**B.** **The district court abused its discretion by determining that the DMT test-results evidence was unreliable and by rescinding the revocation of Knapp's driving privileges based solely on evidence of an imperfect pretest observation period.**

The commissioner maintains that the district court abused its discretion by determining that the DMT test-results evidence was unreliable and by rescinding the revocation of Knapp's driving privileges. More specifically, the commissioner asserts that it was an abuse of discretion for the district court to rely solely on evidence that the deputy did not continuously observe Knapp throughout the pretest observation period, given that Knapp did not offer any evidence to counter the commissioner's prima facie case. The commissioner's argument is persuasive.

As explained above, the commissioner meets their prima facie burden by introducing evidence that a certified DMT operator administered the test and that diagnostic checks showed that the DMT testing device was in working order. "Once reliability is established, the driver must produce evidence suggesting why the test was untrustworthy." *Falaas*, 388 N.W.2d at 42. "Specifically, the driver must present some evidence beyond mere speculation that questions the trustworthiness of the" DMT test results. *Kramer*, 706 N.W.2d at 236.

"Establishing that some impropriety or irregularity occurred during the observation period which would render the test result invalid is . . . a proper basis for challenging the

13

test's reliability." *Id.* at 237. Yet "a deficiency in observation of the subject does not of itself invalidate the test"—it "merely gives the driver an opportunity to suggest why such a failure makes the test results unreliable." *Melin*, 384 N.W.2d at 476; *see also Kramer*, 706 N.W.2d at 236 (explaining that an inquiry into the trustworthiness of the DMT test results "affects the weight of the [results], not its admissibility"). "The argument that something *may have occurred* during observation to affect the test result is speculation and should not be used without supporting evidence as the basis for rescinding a revocation." *Falaas*, 388 N.W.2d at 42. A driver must prove that he ingested or regurgitated something that affected the test results. *Id.*; *see also Hounsell v. Comm'r of Pub. Safety*, 401 N.W.2d 94, 96 (Minn. App. 1987) ("Even if a driver can prove that he had something in his mouth, he must also demonstrate that the substance actually affected his test results."). We therefore hold that it is an abuse of discretion for a district court to determine that DMT test results are unreliable and to rescind the revocation of driving privileges based solely on evidence of an imperfect or improper pretest observation period, without evidence that the driver ingested something or otherwise experienced a bodily function during the observation period and without evidence that the driver's ingestion or bodily function affected the test results.

Our careful review of this record leads us to conclude that Knapp presented no evidence to contradict the commissioner's prima facie case. There is no evidence that Knapp ingested something, regurgitated, burped, belched, or vomited. Instead, the record reflects that the deputy did not observe any burping, belching, or vomiting, and that the deputy checked whether anything was inside Knapp's mouth before the correctional officer

14

administered the DMT test. Thus, even if Knapp had challenged the validity of the DMT test results after the district court received that evidence—which he did not, given that he specifically challenged only the admissibility of the DMT test results—he presented no evidence to suggest that something occurred during the observation period that affected the test results. We therefore conclude that the district court abused its discretion by determining that the DMT test-results evidence was unreliable and by rescinding the revocation of Knapp's driving privileges based solely on evidence of an imperfect pretest observation period, without evidence that Knapp had ingested something or otherwise experienced a bodily function during the observation period that affected the test results. *See Falaas*, 388 N.W.2d at 42; *see also Hounsell*, 401 N.W.2d at 96.

## DECISION

The commissioner satisfies their prima facie burden to establish that DMT test results are reliable and admissible by introducing evidence that a certified DMT operator administered the test and that diagnostic checks showed that the DMT testing device was in working order. Because the commissioner adduced evidence that the correctional officer was a certified DMT operator and that the DMT testing device was functioning properly, the district court abused its discretion by determining that the commissioner failed to meet their prima facie burden.

It is an abuse of discretion for a district court to determine that DMT test results are unreliable and to rescind the revocation of driving privileges based solely on evidence of an imperfect or improper pretest observation period, without evidence that the driver ingested something or otherwise experienced a bodily function during the observation

15

period and without evidence that the driver's ingestion or bodily function affected the test results. Because Knapp did not produce evidence that he had ingested something or otherwise experienced a bodily function during the observation period that affected the DMT test results, the district court abused its discretion by determining that the test results were unreliable and by rescinding the revocation of Knapp's driving privileges based solely on evidence of an imperfect pretest observation period.

**Reversed.**